B 27 (Official Form 27) (12/13)

# UNITED STATES BANKRUPTCY COURT
Western District of Washington

In re Shirley Arlene Schwarz
_____,
            *Debtor*

Case No. 14-11445-MLB
Chapter 7

## REAFFIRMATION AGREEMENT COVER SHEET

This form must be completed in its entirety and filed, with the reaffirmation agreement attached, within the time set under Rule 4008. It may be filed by any party to the reaffirmation agreement.

1. Creditor's Name: Boeing Employees' Credit Union ("BECU")

2. Amount of the debt subject to this reaffirmation agreement:
   $ 3,737.27 on the date of bankruptcy  $ 3,737.27 to be paid under reaffirmation agreement

3. Annual percentage rate of interest: ✓ 4.49 % prior to bankruptcy
   4.49 % under reaffirmation agreement ( ✓ Fixed Rate ___ Adjustable Rate)

4. Repayment terms (if fixed rate): $ 248.86 per month for 17 months

5. Collateral, if any, securing the debt: Current market value: $ 6,775.00
   Description: 2006 Buick Lucerne CX Sedan 4D

6. Does the creditor assert that the debt is nondischargeable? ___ Yes ✓ No
(If yes, attach a declaration setting forth the nature of the debt and basis for the contention that the debt is nondischargeable.)

**Debtor's Schedule I and J Entries**

7A. Total monthly income from $ 1,344.00
    Schedule I, line 12

8A. Total monthly expenses  $3,054.38
    from Schedule J, line 22

9A. Total monthly payments on $ 0.00
    reaffirmed debts not listed on
    Schedule J

**Debtor's Income and Expenses as Stated on Reaffirmation Agreement**

7B. Monthly income from all $ 1,344.00
    sources after payroll deductions

8B. Monthly expenses  $3,054.38

9B. Total monthly payments on $ 0.00
    reaffirmed debts not included in
    monthly expenses

10B. Net monthly income  <$1,710.38>
    (Subtract sum of lines 8B and 9B from
    line 7B. If total is less than zero, put the
    number in brackets.)

11. Explain with specificity any difference between the income amounts (7A and 7B):

    None

12. Explain with specificity any difference between the expense amounts (8A and 8B):

    None

If line 11 or 12 is completed, the undersigned debtor, and joint debtor if applicable, certifies that any explanation contained on those lines is true and correct.

*/s/ Shirley Schwarz*

Signature of Debtor (only required if line 11 or 12 is completed)

Signature of Joint Debtor (if applicable, and only required if line 11 or 12 is completed)

**Other Information**

☐ Check this box if the total on line 10B is less than zero. If that number is less than zero, a presumption of undue hardship arises (unless the creditor is a credit union) and you must explain with specificity the sources of funds available to the Debtor to make the monthly payments on the reaffirmed debt:

Was debtor represented by counsel during the course of negotiating this reaffirmation agreement?
\_\_\_\_\_Yes      \_\_\_\_\_No

If debtor was represented by counsel during the course of negotiating this reaffirmation agreement, has counsel executed a certification (affidavit or declaration) in support of the reaffirmation agreement?
\_\_\_\_\_Yes      \_\_\_\_\_No


**FILER'S CERTIFICATION**

I hereby certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this Reaffirmation Agreement Cover Sheet.

*/s/ Michelle Logston*
Signature

BECU - Creditor
Print/Type Name & Signer's Relation to Case

Check one.
☐ Presumption of Undue Hardship
☒ No Presumption of Undue Hardship
*See Debtor's Statement in Support of Reaffirmation, Part II below, to determine which box to check.*

# UNITED STATES BANKRUPTCY COURT
Western District of Washington

In re  Shirley Arlene Schwarz ,
*Debtor*

Case No. 14-11445-MLB

Chapter 7

## REAFFIRMATION DOCUMENTS

**Name of Creditor:** Boeing Employees' Credit Union ("BECU")

☑ Check this box if Creditor is a Credit Union

### PART I. REAFFIRMATION AGREEMENT

**Reaffirming a debt is a serious financial decision. Before entering into this Reaffirmation Agreement, you must review the important disclosures, instructions, and definitions found in Part V of this form.**

A. Brief description of the original agreement being reaffirmed:   2006 Buick Lucerne CX Sedan 4D

*For example, auto loan*

B. ***AMOUNT REAFFIRMED***:   $  3,737.27

The Amount Reaffirmed is the entire amount that you are agreeing to pay. This may include unpaid principal, interest, and fees and costs (if any) arising on or before   02/28/2014  , which is the date of the Disclosure Statement portion of this form (Part V).

*See the definition of "Amount Reaffirmed" in Part V, Section C below.*

C. The ***ANNUAL PERCENTAGE RATE*** applicable to the Amount Reaffirmed is   4.4900 %.

*See definition of "Annual Percentage Rate" in Part V, Section C below.*

This is a *(check one)* ☑ Fixed rate    ☐ Variable rate

If the loan has a variable rate, the future interest rate may increase or decrease from the Annual Percentage Rate disclosed here.

D. Reaffirmation Agreement Repayment Terms *(check and complete one)*:

☐ $ 248.86 per month for 17 months starting on 04/05/2014.

☐ Describe repayment terms, including whether future payment amount(s) may be different from the initial payment amount.

E. Describe the collateral, if any, securing the debt:

Description: 2006 Buick Lucerne CX Sedan 4D
Current Market Value $ 6,775.00

F. Did the debt that is being reaffirmed arise from the purchase of the collateral described above?

☐ Yes. What was the purchase price for the collateral? $ _____

☒ No. What was the amount of the original loan? $ 13,272.45

G. Specify the changes made by this Reaffirmation Agreement to the most recent credit terms on the reaffirmed debt and any related agreement:

|  | Terms as of the Date of Bankruptcy | Terms After Reaffirmation |
|---|---|---|
| Balance due *(including fees and costs)* | $3,737.27 | $3,737.27 |
| Annual Percentage Rate | 4.490 % | 4.49 % |
| Monthly Payment | $248.86 | $248.86 |

H. ☐ Check this box if the creditor is agreeing to provide you with additional future credit in connection with this Reaffirmation Agreement. Describe the credit limit, the Annual Percentage Rate that applies to future credit and any other terms on future purchases and advances using such credit:

## PART II. DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT

A. Were you represented by an attorney during the course of negotiating this agreement?

Check one. ☒ Yes ☐ No

B. Is the creditor a credit union?

Check one. ☒ Yes ☐ No

C. If your answer to EITHER question A. or B. above is "No," complete 1. and 2. below.

1. Your present monthly income and expenses are:

    a. Monthly income from all sources after payroll deductions
    (take-home pay plus any other income) $_____

    b. Monthly expenses (including all reaffirmed debts except
    this one) $_____

    c. Amount available to pay this reaffirmed debt (subtract b. from a.) $_____

    d. Amount of monthly payment required for this reaffirmed debt $_____

    *If the monthly payment on this reaffirmed debt (line d.) **is greater than** the amount you have available to pay this reaffirmed debt (line c.), you must check the box at the top of page one that says "Presumption of Undue Hardship." Otherwise, you must check the box at the top of page one that says "No Presumption of Undue Hardship."*

2. You believe that this reaffirmation agreement will not impose an undue hardship on you or your dependents because:

    Check one of the two statements below, if applicable:

    ☐ You can afford to make the payments on the reaffirmed debt because your monthly income is greater than your monthly expenses even after you include in your expenses the monthly payments on all debts you are reaffirming, including this one.

    ☐ You can afford to make the payments on the reaffirmed debt even though your monthly income is less than your monthly expenses after you include in your expenses the monthly payments on all debts you are reaffirming, including this one, because:

    Use an additional page if needed for a full explanation.

D. If your answers to BOTH questions A. and B. above were "Yes," check the following statement, if applicable:

☒ You believe this Reaffirmation Agreement is in your financial interest and you can afford to make the payments on the reaffirmed debt.

*Also, check the box at the top of page one that says "No Presumption of Undue Hardship."*

## PART III. CERTIFICATION BY DEBTOR(S) AND SIGNATURES OF PARTIES

I hereby certify that:

(1) I agree to reaffirm the debt described above.

(2) Before signing this Reaffirmation Agreement, I read the terms disclosed in this Reaffirmation Agreement (Part I) and the Disclosure Statement, Instructions and Definitions included in Part V below;

(3) The Debtor's Statement in Support of Reaffirmation Agreement (Part II above) is true and complete;

(4) I am entering into this agreement voluntarily and am fully informed of my rights and responsibilities; and

(5) I have received a copy of this completed and signed Reaffirmation Documents form.

SIGNATURE(S) (If this is a joint Reaffirmation Agreement, both debtors must sign.):

Date 4-1-14     Signature *Shirley Schwarz*
                          *Debtor*

Date _____ Signature _____
                          *Joint Debtor, if any*

**Reaffirmation Agreement Terms Accepted by Creditor:**

Creditor _____BECU_____        PO BOX 97050, SEATTLE, WA 98124-9750
         *Print Name*                         *Address*

         MICHELLE L.              *Michelle Longdon*      4/11/2014
*Print Name of Representative*        *Signature*           *Date*

## PART IV. CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY)

*To be filed only if the attorney represented the debtor during the course of negotiating this agreement.*

I hereby certify that: (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

*Check box, if the presumption of undue hardship box is checked on page 1 and the creditor is not a Credit Union.*

Date 4/1/14   Signature of Debtor's Attorney *W. Jeff Davis*
              Print Name of Debtor's Attorney   W. Jeff Davis

## PART V. DISCLOSURE STATEMENT AND INSTRUCTIONS TO DEBTOR(S)

**Before agreeing to reaffirm a debt, review the terms disclosed in the Reaffirmation Agreement (Part I above) and these additional important disclosures and instructions.**

**Reaffirming a debt is a serious financial decision.** The law requires you to take certain steps to make sure the decision is in your best interest. If these steps, which are detailed in the Instructions provided in Part V, Section B below, are not completed, the Reaffirmation Agreement is not effective, even though you have signed it.

### A.  DISCLOSURE STATEMENT

1. **What are your obligations if you reaffirm a debt?** A reaffirmed debt remains your personal legal obligation to pay. Your reaffirmed debt is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Your obligations will be determined by the Reaffirmation Agreement, which may have changed the terms of the original agreement. If you are reaffirming an open end credit agreement, that agreement or applicable law may permit the creditor to change the terms of that agreement in the future under certain conditions.

2. **Are you required to enter into a reaffirmation agreement by any law?** No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments that you agree to make.

3. **What if your creditor has a security interest or lien?** Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage, or security deed. The property subject to a lien is often referred to as collateral. Even if you do not reaffirm and your personal liability on the debt is discharged, your creditor may still have a right under the lien to take the collateral if you do not pay or default on the debt. If the collateral is personal property that is exempt or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the collateral, as the parties agree or the court determines.

4. **How soon do you need to enter into and file a reaffirmation agreement?** If you decide to enter into a reaffirmation agreement, you must do so before you receive your discharge. After you have entered into a reaffirmation agreement and all parts of this form that require a signature have been signed, either you or the creditor should file it as soon as possible. The signed agreement must be filed with the court no later than 60 days after the first date set for the meeting of creditors, so that the court will have time to schedule a hearing to approve the agreement if approval is required. However, the court may extend the time for filing, even after the 60-day period has ended.

5. **Can you cancel the agreement?** You may rescind (cancel) your Reaffirmation Agreement at any time before the bankruptcy court enters your discharge, or during the 60-day period that begins on the date your Reaffirmation Agreement is filed with the court, whichever occurs later. To rescind (cancel) your Reaffirmation Agreement, you must notify the creditor that your Reaffirmation Agreement is rescinded (or canceled). Remember that you can rescind the agreement, even if the court approves it, as long as you rescind within the time allowed.

6. **When will this Reaffirmation Agreement be effective?**

   a. **If you *were* represented by an attorney during the negotiation of your Reaffirmation Agreement and**

   i. **if the creditor is not a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court unless the reaffirmation is presumed to be an undue hardship. If the Reaffirmation Agreement is presumed to be an undue hardship, the court must review it and may set a hearing to determine whether you have rebutted the presumption of undue hardship.

   ii. **if the creditor is a Credit Union**, your Reaffirmation Agreement becomes effective when it is filed with the court.

   b. **If you *were not* represented by an attorney during the negotiation of your Reaffirmation Agreement**, the Reaffirmation Agreement will not be effective unless the court approves it. To have the court approve your agreement, you must file a motion. See Instruction 5, below. The court will notify you and the creditor of the hearing on your Reaffirmation Agreement. You must attend this hearing, at which time the judge will review your Reaffirmation Agreement. If the judge decides that the Reaffirmation Agreement is in your best interest, the agreement will be approved and will become effective. However, if your Reaffirmation Agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home, you do not need to file a motion or get court approval of your Reaffirmation Agreement.

7. **What if you have questions about what a creditor can do?** If you have questions about reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement. If you do not have an attorney helping you, you may ask the judge to explain the effect of this agreement to you at the hearing to approve the Reaffirmation Agreement. When this disclosure refers to what a creditor "may" do, it is not giving any creditor permission to do anything. The word "may" is used to tell you what might occur if the law permits the creditor to take the action.

B. **INSTRUCTIONS**

1. Review these Disclosures and carefully consider your decision to reaffirm. If you want to reaffirm, review and complete the information contained in the Reaffirmation Agreement (Part I above). If your case is a joint case, both spouses must sign the agreement if both are reaffirming the debt.

2. Complete the Debtor's Statement in Support of Reaffirmation Agreement (Part II above). Be sure that you can afford to make the payments that you are agreeing to make and that you have received a copy of the Disclosure Statement and a completed and signed Reaffirmation Agreement.

3. If you were represented by an attorney during the negotiation of your Reaffirmation Agreement, your attorney must sign and date the Certification By Debtor's Attorney (Part IV above).

4. You or your creditor must file with the court the original of this Reaffirmation Documents packet and a completed Reaffirmation Agreement Cover Sheet (Official Bankruptcy Form 27).

5. *If you are not represented by an attorney, you must also complete and file with the court a separate document entitled "Motion for Court Approval of Reaffirmation Agreement" unless your Reaffirmation Agreement is for a consumer debt secured by a lien on your real property, such as your home. You can use Form B240B to do this.*

C. **DEFINITIONS**

1. **"Amount Reaffirmed"** means the total amount of debt that you are agreeing to pay (reaffirm) by entering into this agreement. The total amount of debt includes any unpaid fees and costs that you are agreeing to pay that arose on or before the date of disclosure, which is the date specified in the Reaffirmation Agreement (Part I, Section B above). Your credit agreement may obligate you to pay additional amounts that arise after the date of this disclosure. You should consult your credit agreement to determine whether you are obligated to pay additional amounts that may arise after the date of this disclosure.

2. **"Annual Percentage Rate"** means the interest rate on a loan expressed under the rules required by federal law. The annual percentage rate (as opposed to the "stated interest rate") tells you the full cost of your credit including many of the creditor's fees and charges. You will find the annual percentage rate for your original agreement on the disclosure statement that was given to you when the loan papers were signed or on the monthly statements sent to you for an open end credit account such as a credit card.

3. **"Credit Union"** means a financial institution as defined in 12 U.S.C. § 461(b)(1)(A)(iv). It is owned and controlled by and provides financial services to its members and typically uses words like "Credit Union" or initials like "C.U." or "F.C.U." in its name.

# Note, Truth-In-Lending Disclosure Statement and Security Agreement

Creditor Boeing Employees' Credit Union ("BECU") PO Box 97050 Seattle, WA 98124-9750


*more than just money* BECU

**BORROWER(S)** Shirley A Silos

| DATE | LOAN ACCOUNT NUMBER | APPLICATION ID NUMBER |
|---|---|---|
| August 14, 2010 | ████2413 | |

Please read all parts of this form, including the Truth-in-Lending Disclosure Statement below and on the reverse side, before signing below and/or endorsing or depositing any Loan Proceeds Check(s) that is part of, and integrated in Agreement, as each person who signs below or endorses or deposits any Loan Proceeds Check(s) is responsible for repaying this loan in full, both individually and jointly with each other person who signs or endorses. In this form, "you" and "your" mean all persons who signed the Master Credit Application and who signs below or signs or deposits a Loan Proceeds Check(s)

## TRUTH-IN-LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE<br>The cost of your credit as a yearly rate | FINANCE CHARGE<br>The dollar amount the credit will cost you | AMOUNT FINANCED<br>The amount of credit provided to you or on your behalf | TOTAL OF PAYMENTS<br>The amount you will have paid after you have made all payments as scheduled |
|---|---|---|---|
| 4.49 % | $ 1,658.73 | $ 13,272.45 | $ 14,931.18 |

| | NUMBER OF PAYMENTS | AMOUNT OF PAYMENTS | WHEN PAYMENTS ARE DUE |
|---|---|---|---|
| Your payment Schedule will be | 59 | $ 248.86 | November 01, 2010 and every month thereafter |
| | 1 | $ 248.44 | October 01, 2015 |

**Variable Rate Feature** Based upon the occurrence of any Default under this Agreement BECU may increase the interest rate on the outstanding balance to 19.9% or the highest rate allowed by law and will increase your payment to an amount sufficient to pay off the balance under the Payment Schedule

☒ **Automatic Payment Variable Rate Feature** If checked your fixed rate loan is subject to a variable rate feature. The interest rate applicable to your loan has been reduced by 0.50% because you have agreed to have your payments made via automatic transfer from your BECU Share/Draft account. If, for any reason, automatic payment of your loan is discontinued or we are unable to transfer the necessary payment amount from your BECU Share/Share Draft Account, your interest rate will subsequently increase by 0.50 percentage points. An increase in the interest rate will result in an increase in the number of your regularly scheduled payments

**Late Charge** If your payment is ten (10) or more days late, you will be charged a late charge in the amount of 5% of the payment amount or $25.00 whichever is greater

**Security** You are giving us a security interest in ☒ The goods or property being purchased ☐ Other as noted on this Security Agreement Collateral securing other loans with us may also secure the loan In addition, we have a statutory lien in all your present and future shares, deposit accounts, and certificates of deposits to the extent of any obligations you may owe to us

**Property Insurance** You may obtain property insurance from anyone you want that is acceptable to BECU

**Other Fees** Filing fee N/A Non-filing insurance N/A

**Prepayment** If you pay off early, you will not have to pay a penalty

See your contract document for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties "e" means estimate

☐ Check this box if you want to receive at this time and itemization of Amount Financed

**SECURITY AGREEMENT:** To secure all obligations of Borrower(s) hereunder to BECU, you give a security interest and lien in and upon the following property. You also pledge your accounts in BECU in accordance with the Pledge of Shares, Deposit Account and Certificates of Deposit terms on the reverse page.

| YEAR | MAKE | MODEL | V I N / SERIAL NUMBER |
|---|---|---|---|
| 2006 | Buick | Lucerne | 1G4HP57256U184495 |

**OTHER**
The Boat Moorage Address is

## NOTE SECURED BY ABOVE SECURITY INTEREST

You jointly and severally promise to pay BECU $ 13,272.45 plus interest at the rate of 4.49% per year on the unpaid balance, according to the designated Automatic Payment Variable Rate Feature provisions and payment schedule in the Truth-in-Lending Disclosure Statement above. You understand that each payment is applied first to late charges, if any, then other charges, interest, then principal. Interest will accrue daily upon the unpaid principal balance of this loan. The rest of the terms and conditions of this Note are described on the reverse side

**LOAN PAYMENT PROTECTION** ("Program") is voluntary and not required in order to obtain credit. We will not consider whether or not you elect Loan Payment Protection in making our credit decision. You authorize BECU to add the fees monthly to your loan balance and charge you interest on the entire balance, and to change your payment. The rate used to determine the fees may change in the future and we will provide any notices of such changes as required by applicable law

| You elect (check one box only) | ☐ Option 1<br>• Loss of Life<br>• Disability<br>• Unemployment<br>• Family Leave | ☐ Option 2<br>• Loss of Life<br>• Disability<br>• Unemployment | ☐ Option 3<br>• Loss of Life<br>• Disability | ☐ Option 4<br>• Disability<br>• Unemployment | ☐ Option 5<br>• Loss of Life | ☒ No Protection |
|---|---|---|---|---|---|---|

**Total Fees**
$ 0.00

*If the outstanding loan balance is greater than $50,000, the rate will not be applied to the amount that exceeds $50,000. The Program contains certain terms and exclusions. You are eligible for the program if you are a borrower on the loan and under age 65 on the effective date of protection. The Program protects the first two borrowers listed on the lending agreement. The protected borrower(s) may not qualify for all benefits

THIS NOTE, TRUTH-IN-LENDING DISCLOSURE STATEMENT AND SECURITY AGREEMENT ("AGREEMENT") INCLUDES THE PARAGRAPHS ON THE REVERSE SIDE HEREOF WHICH ARE HEREBY INCORPORATED HEREIN BY REFERENCE. YOU ACKNOWLEDGE THAT YOU HAVE READ THE TERMS SET OUT IN THIS AGREEMENT, THAT YOU FULLY UNDERSTAND IT, AND THAT YOU HAVE RECEIVED A COMPLETELY FILLED OUT COPY OF IT. YOU AUTHORIZE US TO DISBURSE ANY OF THE PROCEEDS OF THE LOAN TO OR UPON THE INSTRUCTIONS OF ANY BORROWER

| SIGNATURE OF BORROWER | DATE | SIGNATURE OF BORROWER | DATE |
|---|---|---|---|
| *[signed] Shirley Silos* | 9-2-10 | | |
| SIGNATURE OF BORROWER | DATE | SIGNATURE OF BORROWER | DATE |
| | | | |
| SIGNATURE OF COLLATERAL OWNER OTHER THAN BORROWER | DATE | SIGNATURE OF COLLATERAL OWNER OTHER THAN BORROWER | DATE |

BECU662 6/2010

Page 1 of 2

Shirley A Silos
6406 S Lawrence St
Tacoma          WA     98409

ADDITIONAL PROVISION OF AGREEMENT (CONTINUED FROM REVERSE SIDE)

**Liability of Parties** Each person who applied for this loan by signing the Master Credit Application and who signs this NOTE, TRUTH-IN-LENDING DISCLOSURE STATEMENT and SECURITY AGREEMENT ("Agreement") as a borrower, including but not limited to endorsement or deposit of a Loan Proceeds Check, ("You") agrees to be individually and jointly obligated to pay this loan in accordance with the terms of this agreement. Any person who signs this Agreement as a collateral owner other than borrower does so voluntarily and solely to give a security interest in the collateral, but is not personally liable for any indebtedness created by this Agreement

**Promise to Pay** You unconditionally promise to pay, in lawful money of the United States, the amount borrowed plus interest and other permitted charges and fees BECU according to the terms of this Agreement including those set forth in the Truth-in-Lending Disclosure Statement. You agree to pay the entire outstanding balance of any CD loan no later than the maturity date or early withdrawal of the CD or date of closure of the share account. Any partial withdrawal of interest on the CD may be applied to pay down the CD loan. The specifically designated CD or Share account securing this loan is part of the collateral in which you have granted BECU a security interest pursuant to the Security Agreement set forth in this Agreement. **Automatic Payment Transfer Method** if you pay this loan by automatic transfers, you agree that it is your responsibility to ensure that adequate funds are in your account to satisfy the payment on the specified date or your loan will become past due. In addition, you authorize BECU to increase your loan payments to the nearest whole dollar amount as well as adjust your final payment to include any fees related to the transfer or release of collateral

**Crediting Payments** Payments received at BECU, P O Box 97050, Seattle, WA 98124-9750 by 5 00 PM Pacific Time on any business day will be credited to your loan as of that date, payments received at that address after 5 00 PM Pacific Time, on a weekend or federal holiday will be credited to your loan as of the next business day. Crediting to your loan may be delayed up to five days if payment is received by mail at any other address or not accompanied by any remittance slip or statement we provide. Payments Your payments are to be made according to the Payment Schedule in this Agreement. **Pre-payment and Irregular Payments** You may pay all or part of your loan early, at any time, without paying any penalty. Prepayment or early payment will reduce the principal amounts owing on your loan but will not relieve you of your obligation to make your subsequent payments on the dates when due. BECU reserves the right to refuse partial payments. We may accept late payments, partial payments and payments marked "payment in full" that are not sent to the following address without losing our rights under this Agreement. ALL COMMUNICATIONS CONCERNING ANY DISPUTED DEBTS INCLUDING ANY CHECK OR INSTRUMENT TENDERED AS FULL SATISFACTION OF A LOAN (INCLUDING LOANS), SHALL BE SENT ONLY TO THE ATTENTION OF Risk Management Representative – Account Dispute P O Box 97050, Seattle WA 98124-9750

**Modification of Loan Terms** The terms of this Agreement (such as payment due dates, payment amounts and the like) may be modified after the date of this Agreement with the consent of the parties to this Agreement

**Fees, Costs and Charges** You agree to pay the following a) **Closing Costs and Final Payment Fees, Costs and Charges** related to the origination or servicing of this loan, such as costs incurred in verifying your credit eligibility, filing and recording fees, processing fees for preparing documents in connection with or for the release, transfer or reconveyance of collateral, and any other out-of-pocket expenses due at loan closing or upon final payment of this loan, b) a **Late Charge Fee** as described in the Truth-in-Lending Disclosure Statement on the reverse page, c) **Attorneys' Fees and Collection Costs** including BECU's internal and external costs of collection and other expenses such as repossession fees, expert witnesses, debt collectors, court costs, and reasonable attorneys' fees and legal expenses whether or not there is a lawsuit, including attorneys fees in any arbitration or mediation, on appeal, in any bankruptcy (or state receivership or other insolvency proceeding) and in any forfeiture or other proceeding, d) a **Returned Check Charge** of $25 00 when any check or other instrument given as payment on this loan is uncollectible or is dishonored for any reason. Unless otherwise required by law, we do not have to attempt to collect any check more than once. e) a **Failed Automatic Payment Charge** of $25 00 if you have elected to pay your payment by automatic transfer and the funds are not available in your BECU share account on the authorized transfer date and f) a **Payment Modification Fee** of $25 00 when you request to change the payment frequency or the payment due date for this loan. All of the Closing Costs and Final Payment Fees, Costs and Charges, Attorneys' Fees and Collection Costs and Payment Modification Fees may be added to your present debt and a finance charge will be imposed on them at the loan rate. The security provisions of this Agreement also secure payment of all these amounts. If any fee or charge, or any portion of any fee or charge described is prohibited by applicable law, the language of this Agreement shall be automatically reformed to eliminate any excessive or unlawful portion of such fee. In no event shall the fees charged under this agreement exceed the maximum allowed under applicable state or federal law

**Default** You will be in default under this Agreement if any of the following happens on this loan a) you do not make a payment as required by this Agreement on or before the payment due date, b) you become subject to bankruptcy, incompetency or insolvency proceedings or you die, c) any time BECU reasonably determines that the value of any collateral has substantially declined or we reasonably deem ourselves insecure, d) you make any untrue statements or omissions or provide false signatures on any application or financial statement furnished to BECU or fail to provide us financial information we request, e) your payment item is returned unsatisfied for any reason, f) if we believe (in our sole discretion) that there has been an adverse change in your financial condition, g) you violate or fail to comply with any term of this Agreement or any other you have with BECU, h) someone tries to levy, execute upon or attach or seize any property securing this Agreement (including any share or other accounts at BECU), i) you no longer qualify for BECU membership, j) any necessary title release from a third party is not provided to BECU and/or BECU does not obtain a Certificate of Title showing BECU as the sole lienholder within 30 days of the loan disbursal, k) you fail to obtain and/or maintain the property insurance required pursuant to this Agreement, or l) any necessary title release from a third party is not provided to BECU and/or BECU does not obtain a Certificate of Title showing BECU as the sole lienholder within 30 days of loan disbursal. Default on any loan, account or other obligation that you have with us, may constitute default under this Agreement

**Remedies** If an event of Default occurs, BECU may exercise all remedies provided by law. These remedies include but are not limited to, that BECU may a) start a collection action in the county in which BECU is located or where you reside if you live outside of Washington b) demand that you deliver the collateral (and any related documents or certificates) to BECU or make it available to BECU at a place reasonably convenient to both parties, at BECU's option c) enter any premises where the collateral is located and take possession of the collateral without notice, demand, or legal proceeding, and d) after ten (10) days notice to you, sell at public or private sale or otherwise dispose of the collateral and apply the proceeds to any debts secured by this Agreement, and e) demand payment of all expenses incurred by BECU to protect, sell, or dispose of the collateral, including, but not limited to the expenses set forth in this Agreement and attorneys' fees incurred by BECU for collecting any amounts owed by you to BECU or for protecting or defending the collateral or BECU's interest therein even if suit is not commenced. f) BECU may charge interest at a rate of 19 9% per year on the outstanding balance following default and increase your payment to an amount sufficient to pay off the balance under the original Payment Schedule, and g) may demand that you immediately pay the entire unpaid balance, to the extent permitted by law

**Enforcement** In its sole discretion, BECU may delay or waive enforcing any right under this Agreement, at its sole discretion without losing that right or any other right in the future. In the event you die we can collect any amounts outstanding under this loan as immediately owed against your estate or against any person obligated under this Agreement. If any provisions of this Agreement or related agreement are deemed unenforceable or invalid, the remaining provisions will remain in full force and affect

**Assignment** BECU has the right to assign and transfer our rights under this Agreement and any amounts you owe to us. The term "us" shall be deemed to include each and every immediate and successive assignee. You do not have the right to assign or transfer any of your rights, duties or obligations under this Agreement

**Notices** All notices and statements will be sent to the last address appearing on BECU records. You agree to advise us promptly if you change your mailing address. We can accept address corrections received from the U S Postal Service

**Credit Information/Financial Statements** You authorize BECU to release information to others regarding the status and history of this loan. You agree to provide us upon request at any time in our sole discretion with a current financial statement, updated credit information, or any appraisal on the collateral. If you fail to provide such an acceptable appraisal within a reasonable period of our request, we may obtain it ourselves and add its cost to this loan. You agree we may obtain credit reports, employment or investigative inquiries on you at any time, at our sole option and expense, for any reason, including but not limited to determination of an adverse change in your financial condition

**Governing Law** This Agreement shall be governed by the Federal laws and the laws of the state of Washington as they each apply. In accepting the terms of this Agreement you agree that venue for any action brought by you or brought by us to enforce the terms of the agreement is properly located in King County, Seattle, Washington

**SECURITY AGREEMENT** You grant BECU a security interest under the Uniform Commercial Code in all collateral described in this Agreement, including the Truth-in-Lending Disclosure Statement. This security interest includes all attachments, accessories, accessions parts supplies, upgrades or improvements to such property even if acquired by you after the date of this loan (for example tires or batteries attached to a car). All collateral (other than collateral consisting of a dwelling, real property or household goods) securing this loan will secure all your other obligations to BECU including all existing and future credit

**Ownership** You represent that except for the security interest granted under this Agreement you own the collateral free and clear of all liens, security interests and other encumbrances and that the primary use of the collateral is for personal, family, or household purposes. You agree not to sell, lease, further encumber or transfer the collateral or remove the collateral from the state in which you reside without prior express written permission from us. You agree to give us fourteen (14) calendar days notice before changing your name, your address or the address where the collateral is kept. You agree to deliver any certificate of title or marine mortgage to the collateral to us showing BECU's security interest in the collateral

**BECU Lien** You agree BECU has a lien on all your shares, deposits and dividends in all joint and individual accounts held by you now and in the future, to the extent of your obligations to BECU. You agree that BECU's lien is independent of any security agreement and BECU may enforce its lien in any manner at any time allowed by applicable law. You agree that you own any shares pledged and that there are no liens against them other than ours. BECU may, at its sole option, allow you to withdraw a portion of your shares or deposits without affecting its security interest

**Pledge of Shares, Deposit Accounts and Certificates of Deposit** You pledge all your BECU shares, deposit accounts, and certificates of deposit in which you have an interest, now and in the future, as security for this loan excluding retirement or other accounts in the extent that applicable law precludes the pledge of such accounts or to loans secured by real property or a dwelling. You agree that we need not retain or possess any certificate or evidence of account to enforce our security interest. You understand that if you default on this loan, BECU may apply all that is pledged to repayment of this loan. Loans secured by a pledge under this paragraph, for which an automatic hold is placed on your share, deposit or certificate of deposit account are not necessarily the same as the loans secured by specifically identified share, deposit or certificate of deposit accounts specifically pledged as collateral for this loan

**Property Maintenance/Insurance** You agree to keep the collateral in good repair and to maintain the property in a condition that does not adversely affect its value. You agree a) to purchase and maintain the following property insurance coverage on the collateral in the form of vehicles, aircraft or vessels for its full insurable value, with BECU as loss payee against loss and damage minimum liability for bodily injury or death to any one person in the amount of $100,000, and for any one injury in the amount of $300 000 and minimum property damage insurance of $50,000, b) that the insurance must provide at least comprehensive fire, theft and collision coverage with deductibles of not more than $1 000 for vehicles or 10% of the vessel or recreational vehicle loan balance, c) to provide us with evidence of this coverage upon request and d) we may receive any payment of loss or returned premium and apply the amounts received at our option to repair or to replace the vehicle or to your indebtedness under this Agreement, including indebtedness not yet due. You may obtain property insurance through any company you choose that is satisfactory to us. If insurance benefits do not pay the loan balance in full you will remain responsible for the unpaid balance due and for the interest, which will continue to accrue on the unpaid loan balance. We may also charge your loan any costs necessary to protect our security interest in the collateral including paying any taxes or making payments to cure defaults under any existing liens on the collateral. You agree we may demand full payment of such costs or we may increase your payment to an amount sufficient to pay such costs in a period generally no greater than a year. We have no obligation to make any payments under this paragraph. PLEASE NOTE THE FOLLOWING INFORMATION UNLESS YOU PROVIDE US WITH EVIDENCE OF THE INSURANCE COVERAGE AS REQUIRED BY THIS AGREEMENT, BECU MAY PURCHASE INSURANCE AT YOUR EXPENSE TO PROTECT ITS INTEREST. THIS INSURANCE MAY, BUT NEED NOT, ALSO PROTECT YOUR INTEREST. IF THE COLLATERAL BECOMES DAMAGED, THE COVERAGE BECU PURCHASES MAY NOT PAY ANY CLAIM YOU MAKE OR ANY CLAIM MADE AGAINST YOU. YOU MAY LATER CANCEL THIS COVERAGE BY PROVIDING EVIDENCE THAT YOU HAVE OBTAINED PROPER COVERAGE ELSEWHERE. YOU ARE RESPONSIBLE FOR THE COST OF ANY INSURANCE PURCHASED BY BECU. THE COST OF THIS INSURANCE MAY BE ADDED TO YOUR LOAN BALANCE. IF THE COST IS ADDED TO YOUR LOAN BALANCE, THE INTEREST RATE ON THE UNDERLYING LOAN WILL APPLY TO THIS ADDED AMOUNT. THE EFFECTIVE DATE OF THE COVERAGE MAY BE THE DATE PRIOR TO THE DATE COVERAGE LAPSED OR THE DATE YOU FAILED TO PROVIDE PROOF OF COVERAGE. THE COVERAGE BECU PURCHASES MAY BE CONSIDERABLY MORE EXPENSIVE THAN INSURANCE YOU CAN OBTAIN ON YOUR OWN AND MAY NOT SATISFY WASHINGTON'S MANDATORY LIABILITY INSURANCE LAWS

**Disposal upon Default** You may keep and use any collateral that secures your obligations to BECU under this Agreement so long as you are not in default under this Agreement. If you are in default, BECU will have all of the rights of a secured party under the Uniform Commercial Code, in addition to any other rights BECU may have. You will assemble the collateral and make it available to BECU, if BECU requests you to do so. BECU may take the property peaceably and sell it. BECU will apply the sale price less the expenses of repossessing, selling attorney's fees and other lawful expenses of the sale ("net proceeds") to reduce the amount you owe. If you are entitled to any notice by law, you agree that 10 days is reasonable time to give you notice of any such sale. Notice will be sent to your last address appearing on BECU records

**Additional Documents and Power of Attorney** You agree to sign any other documents, such as certificates of title, and authorize us to file financing statements as may be necessary to perfect or protect BECU's security interest. To expedite the release or perfection of our security interest in any titled collateral in which you have granted BECU a security interest and in which we hold the certificate of title you hereby give BECU power of attorney to sign your name to such certificate and to apply in your name for the issuance of a certificate of title to any titled collateral in which you became owner. BECU may sign any other documents (such as certificates of title) to perfect our security interest and you authorize BECU to file financing statements to perfect BECU's security interest. You agree to provide us with collateral control or other agreements, in form and substance satisfactory to BECU with such third parties as we may deem necessary to perfect and maintain the priority of our security interest. YOUR SIGNATURE ON THE REVERSE SIDE OR LOAN PROCEEDS CHECK IS YOUR SIGNATURE TO THIS SECURITY AGREEMENT

**LICENSING**    Vehicle/Vessel Inquiry        March 20, 2014 10:28:35 AM
Boeing Employees Credit Union

The vehicle information displayed below is from the current vehicle record as of 3/20/2014 at 10:30:39 AM
To request copies of records, reports of sale, or a fee history, please call 360-359-4002.
For titling questions, please call Customer Service at 360-902-3770, option 5.

### OWNER INFORMATION

Mailing address of registered owner
Schwarz, Shirley A
512 W 15th St
Port Angeles, WA 98362-7510

Legal owner
Becu
PO Box 997500
Sacramento, CA 95899

### PLATE INFORMATION

| | |
|---|---|
| Plate | ACD2730 |
| Expires | 9/07/2014 |
| Issued | 09-2010 |
| Tab # | A394665-14 |
| Previous tab # | U055573-13 |

### PLATE/VIN FLAGS

Plate flags      VIN flags
Lien holder
Centennial plate

### TITLE/RENEWAL INFORMATION

| | |
|---|---|
| Last transaction | Verified title update |
| Last tran date | 10/11/2013 |
| Total fees paid | $19.00 |
| Previous transaction | Reissue without license |
| Previous tran date | 10/1/2013 |
| Title # | 1327437918 |
| Title transferred | 9/11/2010 |

### REMARKS

TBD = 0502
Reverified address

### BRANDS

### VEHICLE INFORMATION

| | |
|---|---|
| Model year | 2006 |
| Make | BUIC |
| Series body | LUC4D |
| Model | UC |
| Body type | 4D |
| VIN | 1G4HP57256U184495 |
| Use class | Passenger car |
| Color | Silver |
| Current odometer | A 00062302 |
| Previous odometer | 00000000 |
| Power | Gasoline |
| Value code | $26,265 |
| Value year | 2006 |

### ADDITIONAL VEHICLE INFORMATION

| | |
|---|---|
| Gross weight | |
| Scale weight | 3,200 lbs. |
| Tonnage fees | $0.00 |
| Tonnage abatement | 00 |
| Tonnage exp date | |

**Privacy Act Disclaimer**
Access to IVIPS is restricted to authorized persons or organizations.
Unauthorized use or disclosure of vehicle and vessel information is a crime punishable by fine or imprisonment and may result in civil damages.